# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Adversary Proceeding |
| RODNEY E. ELLIOTT | ) | |
| (Chapter 7 Case Number 10-40245) | ) | Number 10-4030 |
| | ) | |
| *Debtor* | ) | |
| | ) | |
| | ) | **FILED** |
| | ) | Samuel L. Kay, Clerk |
| JOHN P. JOHNSON and | ) | United States Bankruptcy Court |
| CYNTHIA JOHNSON | ) | Savannah, Georgia |
| | ) | By lbarnard at 1:02 pm, Mar 21, 2011 |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RODNEY E. ELLIOTT | ) | |
| | ) | |
| *Defendant* | ) | |

## MEMORANDUM AND ORDER

This matter came before the Court on December 7, 2010, for trial of the above-captioned adversary proceeding to determine the dischargeability of debt in the amount of $20,000.00. Based upon the evidence presented at trial, I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

In 2008, Defendant Rodney E. Elliott gave Plaintiffs John and Cynthia

Johnson a proposal to build a two-car, stand-alone garage at Plaintiffs' residence for $35,000.00. Defendant's proposal required Plaintiffs to pay him a down payment of $20,000.00, with the balance of $15,000.00 to be paid upon completion of the garage. Plaintiffs accepted Defendant's proposal, and on July 15, 2008, that acceptance of the proposal was memorialized in a legal and binding contract for Defendant to build Plaintiffs a garage in exchange for $35,000.00. Exhibit P-2, exhibit A thereto. On July 16, 2008, Plaintiffs gave Defendant a cashier's check in the amount of $20,000.00 as the down payment for which the parties had contracted. That $20,000.00 was deposited into Debtor's "general fund," from which he financed multiple projects.

After he received Plaintiffs' $20,000.00, Defendant dug trenches in Plaintiffs' yard, cut down a tree, dismantled one side of a privacy fence, and left the dismantled fence stacked in the yard, exposing it to the elements. Defendant failed to return to the site to construct the garage. Defendant also failed to return Plaintiffs' money.

Some time after Debtor and Plaintiffs signed the construction contract, Debtor signed another construction contract with a buyer to build a "spec" house. Debtor was diagnosed with cancer in December of 2008 and thereafter he was unable to secure any more loans to cover the operating costs of his business. Debtor lost approximately $40,000.00 when the "spec" house he was building failed to sell as Debtor and that buyer had agreed. In January of 2009, Debtor began his cancer treatment. Debtor did not tell Plaintiffs of his cancer because he was embarrassed that he was not going to be able to complete the

garage as promised. Debtor took on no new contracts from December of 2008 until approximately July of 2009. Debtor also continued to run an unprofitable alarm technology company because he did not want to lay off workers.

Debtor, when asked why he could not return the $20,000.00 to Plaintiffs, responded that he was diagnosed with cancer. When asked what happened to the $20,000.00, he responded that it went into the general fund, and that he had a couple of projects going at that same time. And when asked whether he was going to make a profit on his current (South Carolina) project, he testified that his profit was "getting eaten up with health insurance and everyday things." Accordingly, I find that Debtor's health insurance and other day-to-day expenses were paid from the general fund and that Debtor could not finish the project or refund the $20,000.00 because he used it for personal and business expenses unrelated to the Plaintiffs' project. I further find that Debtor paid for those expenses knowing that he was unable to replenish those funds and that such payments would make completing Plaintiffs' garage impossible.

On March 31, 2009, Plaintiffs demanded repayment and sued for return of the $20,000.00 down payment. As a matter of law, there is no bona fide dispute as to the facts and circumstances giving rise to the debt owed by Defendant to Plaintiffs. Defendant was unable to repay Plaintiffs, as he depleted his general fund by paying expenses unrelated to the construction of the garage. On August 18, 2009, Defendant filed Chapter 13, which was dismissed before confirmation. On November 24, 2009, Defendant filed a second

Chapter 13 case, which was also dismissed before confirmation. On February 1, 2010, Defendant filed a third Chapter 13 case. The instant adversary proceeding arises from that Chapter 13. Debtor testified that he will have the ability to repay this $20,000.00 debt once he gets "straightened out," by downsizing and decreasing some expenses.

On May 4, 2010, Plaintiffs filed a Complaint to Determine Dischargeability of Debt. Plaintiffs assert that their claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) as arising from misrepresentation by the Defendant upon which they justifiably relied to their detriment, and pursuant to 11 U.S.C. § 523(a)(6) as originating from a "willful and malicious injury."

## CONCLUSIONS OF LAW

The Court finds no actual fraud on the part of the Defendant, in that Defendant made no misrepresentations to Plaintiffs to intentionally deceive them as to his future intentions to do the promised work. However, Defendant's actions in accepting $20,000.00 from Plaintiffs, coupled with his abandonment of the promised work, his continued spending from the general fund, his inability to obtain financing, and his inability to enter new construction contracts, was substantially certain to (and in fact did) harm Plaintiffs. When Defendant accepted $20,000.00 from Plaintiffs as down payment for work he ultimately did not perform, and spent that money on expenses unrelated to the construction of the garage with no prospect of replenishing the general fund from any source, he exposed himself to liability under 11 U.S.C. § 523(a)(6).

I. The Standard

"[C]ourts generally construe the statutory exceptions to discharge in bankruptcy liberally in favor of the debtor, and recognize that the reasons for denying a discharge must be real and substantial, not merely technical and conjectural." In re Miller, 39 F.3d 301, 304 (11th Cir. 1994) (punctuation omitted). A reason is "substantial" when it is "not seeming or imaginary." Webster's Third New International Dictionary, p. 2280 (1986). A reason is "conjectural" when it is based on grounds "confessedly insufficient to [form a] certain conclusion." Id. at p. 479. Accordingly, an exception to discharge should be granted only if there is an actual reason which is based on grounds sufficient to form a conclusion.

II. Section 523(a)(2)(A)

The Bankruptcy Code provides that:

> [a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition
> . . . .

11 U.S.C. § 523(a)(2)(A). "The elements of a claim under § 523(a)(2)(A) are: (1) the debtor made a false representation with the intention of deceiving the creditor; (2) the creditor relied on the false representation; (3) the reliance was justified; and (4) the creditor sustained a loss as a result of the false representation." E.g. In re Wood, 245 Fed. Appx. 916, 917-18 (11th

Cir. 2007) (citing In re Bilzerian, 153 F.3d 1278, 1281 (11th Cir.1998)).

A false representation requires a misrepresentation of intent. A breach of a promise is not necessarily a false representation if intervening events cause the debtor to change his course of action; the debtor must have intended not to perform a the time the promise was made. In re Foster, 2010 WL 2025784, *2 (Bankr. N.D. Ga. 2010) (citing 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.2009)). In the instant case, the $20,000.00 cannot be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) because this Court does not find that Defendant committed actual fraud, or that he made misrepresentations with the intent of deceiving plaintiffs.

III. Section 523(a)(6)

The Bankruptcy Code also provides that "[a] discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. § 523(a)(6).

Willful Requirement

"The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). A debtor acts willfully when he acts with intent for a desired outcome or if he knew with substantial

certainty that his actions would result in the injury. <u>In re Walker</u>, 48 F.3d 1161, 1165 (11th Cir.1995); <u>In re Camacho</u>, 411 B.R. 496, 506 (Bankr. S.D. Ga. 2009) (Davis, J.) ("Engaging in a voluntary act with the belief that harm is substantially certain to occur is . . . sufficiently willful and malicious."). I find that Defendant's injury to Plaintiffs was willful. Debtor's use of the funds for expenses other than expenses relating to the construction of the garage was willful. When Debtor abandoned the job, was unable to secure more contracts, lost $40,000.00 on another project, and stopped doing business as a result of his health problems, while continuing to use those funds to pay health insurance and other day-to-day business and personal expenses, it was substantially certain that Plaintiffs would be injured.

This is not a case in which Debtor failed to complete the project because he mistakenly bid too low a figure to complete the project. This is not a case where unforeseeable circumstances alone prevented Debtor from completing the project. Instead, circumstances intervened, yet Debtor elected to spend the money he needed to finish the garage on other expenses. While that money belonged to Debtor once the transfer was made, the act of voluntarily depleting his general fund, knowing he was unable to replenish those funds, knowing he would be unable to finish the project, and withholding the information that he was unable to complete the project (due to his illness) resulted in a willful injury. <u>Winterchase Townhomes, Inc. v. Koether</u>, 193 Ga. App. 161, 163 (Ga. App. 1989) (holding that once a down payment is made on a contract, the funds belong to the party receiving the down payment).

### Malicious Requirement

Further, within the context of § 523(a)(6), "malicious" means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." In re Walker, 48 F.3d at 1164 (quoting In re Ikner, 883 F.2d 986, 991 (11th Cir. 1989)). I find that Defendant's actions were malicious, in that he wrongfully used funds—the only funds Debtor had which he could use to complete the job—without just cause. Debtor used the funds for health insurance and other day-to-day business and personal expenses instead of either completing the garage or returning the funds (or even a portion thereof) to the Plaintiffs. Plaintiffs did not deliver the $20,000.00 to provide unrestricted working capital to Debtor, but rather to fund the labor and materials for the garage project. Debtor took the money and elected to spend it on expenses unrelated to the project at hand. While that money was not encumbered by any express trust obligation, Debtor rolled the dice when he "borrowed" from those funds to cover working capital or personal expenses. When he did so, he assumed the risk of being unable to replenish the funds in order to complete the project. Yet when that inability became obvious, had Debtor elected to return the unspent portion of Plaintiffs' down payment, the result might be different. Instead, Debtor, knowing he would never finish their project decided to keep the money. Debtor, not Plaintiffs, made that decision and now Debtor, not Plaintiffs, must live with it.

This behavior does not evidence " personal hatred, spite or ill-will", but it

certainly rises to the level of "wrongful and without just cause." Debtor knew that he had neither funding nor predictable future revenue to complete the Plaintiffs' job, yet even after that became obvious to him, he continued to pay expenses unrelated to the construction of the garage from the general fund. With expenses going out, no new revenue coming in, no new loans to cover his operating expenses, and the garage uncompleted, Debtor's actions were wrongful and without just cause.

## CONCLUSION

Accordingly, Defendant's acts were willful and malicious. The injury Plaintiffs sustained was neither technical nor conjectural. The $20,000.00 debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) because Defendant's actions were substantially certain to result, and did result, in harm to Plaintiffs. Attorneys' fees requested by Plaintiffs are denied because this Court holds that the basis for that request, O.C.G.A. § 13-6-11, is inapplicable in a bankruptcy proceeding.

## O R D E R

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS

THE ORDER OF THIS COURT that the debt in the amount of $20,000.00 owed by the Defendant to John and Cynthia Johnson is excepted from discharge under § 523(a)(6).

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 18th day of March, 2011.